# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs August 21, 2013 at Knoxville

## STATE OF TENNESSEE v. NORMAN G. PAGE

### Appeal from the Circuit Court for Williamson County
No. I-CR085829     Robbie T. Beal, Judge

### No. M2013-00282-CCA-R3-CD - Filed October 8, 2013

The defendant, Norman G. Page, was convicted by a Williamson County Circuit Court jury of theft of property valued over $1,000 but less than $10,000, a Class D felony, and was sentenced to twelve years as a career offender in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

Vanessa P. Bryan, District Public Defender; Robert W. Jones (on appeal and at trial) and Vince Wilcox (at trial), Assistant Public Defenders, for the appellant, Norman G. Page.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Bradshaw, Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary K. White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

This case involves the theft of multiple packages of razor blades from a Publix supermarket in Franklin, Tennessee, for which the defendant was charged with theft of property valued over $1,000 but less than $10,000.

At trial, Joe Zarcone testified that he was the store manager of the Publix supermarket located at 2100 Riverside Drive in Franklin. One of his responsibilities as store manager was

monitoring internal and external shrinkage of store merchandise, including theft. On December 19, 2010, Zarcone and his employees noticed that the store's two sections of razor blade cartridges "were void of product." He explained that a large void of product in a section is often an indication that a theft had occurred because the store's computer kept an accurate inventory of the products on the shelves.

Publix used a multiple camera digital DVR system to record activity in the store throughout the day. When Zarcone noticed the missing product, he reviewed the surveillance video taken earlier that day, which included footage of the store's two razor blade sections. The video showed two suspects enter the store. One of the suspects carried a hand basket and took multiple packages of razor blade cartridges off the shelf and put them into his basket. That suspect met up with the other suspect, and they exchanged the products and the basket back and forth between each other on multiple occasions. On at least one occasion, they concealed products in one of their jackets. The suspects left the store without purchasing any of the products.

Zarcone noted that six different "SKUs" of refill razor blade cartridges were completely void of product in the store that day and that there were typically five or six items of each SKU in two different sections of the store. He estimated that more than thirty packs of razor blades were missing that day, ranging in value from $15 to $25 each pack.

On December 30, 2010, Zarcone personally observed the same two suspects in the store and they were, once again, "huddled up" and exchanging razor blade products amongst each other. One suspect helped the other put products inside the other's jacket. The suspects left the store without paying for any of the products that day. Zarcone followed them out the door and stopped and conversed with one of the suspects, later identified as the defendant. The defendant told Zarcone that he did not have any products on him. However, Zarcone asserted that the other suspect had products, and then the defendant ran from Zarcone. Zarcone grabbed the defendant's jacket when he took off running. The defendant ran to a late model sedan where the other suspect was waiting, and they drove away. One of Zarcone's employees got the license plate number of the car and called the police. Zarcone gave the responding officer the defendant's jacket and the cell phone that fell out of the jacket during the confrontation.

The store's video recording detailed the suspicious activity, and Zarcone provided the videos to the police. The video from December 19 showed one of the suspects in the razor blade section putting products into his hand basket. The suspect met up with the other suspect in another section, they huddled together, exchanged the basket, walked around the store, and exchanged the hand basket back and forth. Zarcone explained that the purpose of such type of behavior was typically to confuse the store personnel and make it difficult to stop a suspected thief. The video from December 30 showed the suspects "spend[ing] a great

deal of time" in the aisle and at the endcap where the razor blades were kept. Some of the camera angles showed "some sort of transfer of . . . product" between the two suspects. The video showed the suspects leaving the store separately, and Zarcone trying to catch up with them outside the store.

Zarcone identified a photograph of the defendant as the suspect in the light-colored jacket that he encountered in the store on December 30 and whom he believed to also be the suspect in the December 19 video. Zarcone was 100% sure of his identification.

On December 31, 2010, Zarcone took an inventory of the store's razor blade cartridges, and the report showed that forty-five units were missing on that date. Zarcone estimated that, in addition, approximately thirty units were taken on December 19. The report listed the number of items that should have been in stock for each razor blade cartridge SKU and the quantity the store actually had on the shelf. Zarcone calculated the total amount of product missing by multiplying the number of missing items by their price. He determined that the total retail value of the razor blade cartridges stolen on December 30 was $1,039.45. Zarcone reiterated that he personally saw the suspects taking products from the shelves and not purchasing them on December 30.

Zarcone stated that Publix ran an inventory batch report "almost daily" to ensure that "out of stocks [were] reported and balanced." He explained that an employee scanned any empty shelves, and the computer reported how many items they should have in inventory. The employee was responsible for checking around the store for misplaced products if the computer reported that there should be items in stock. At the beginning of the day on both December 19 and 30, the store did not have any out of stock razor blades, which indicated that the items "had clearly been taken on that day." On cross-examination, Zarcone admitted that the last third-party complete inventory that was taken prior to December 31 occurred on October 18. However, on redirect, he explained that the inventory was "trued up" on December 20 or else "the computer would not have re-ordered that product to come here to be on the shelf on the 30th."

Officer Marc Swain, a patrol officer with the Franklin Police Department, testified that he responded to the Publix call to investigate the theft. Zarcone informed Officer Swain about the events surrounding the missing inventory and gave him the defendant's cell phone, jacket, and vehicle license plate number. He asked Zarcone to do an inventory of the store. Officer Swain had dispatch run the license plate number and determined that Nina Page was the registered owner of the car. He also called phone numbers in the cell phone's contact list and got a hold of someone named Joe Page who linked the phone to its owner, Nina Page. Based on his conversation with Joe Page and a later conversation with Nina Page, Officer Swain identified two possible suspects and obtained driver's licenses for both individuals.

He also received copies of the store's surveillance video footage from Zarcone, which he reviewed and noted the similarity of the suspects on both dates as well as one suspect's similarity to the defendant. Officer Swain arranged photographs of the suspects into two, six-person photographic arrays for Zarcone to view. Zarcone identified the defendant out of one of the arrays but was unable to identify the second suspect out of the other array.

Officer Nick Grandy, a patrol officer with the Franklin Police Department, testified that he transported the defendant to the police station after he was arrested on the warrant taken out by Officer Swain for the theft of razor blades from Publix. While in Officer Grandy's car, the defendant said, without provocation, that he did not understand why he was being charged for theft "because he didn't have anything on him when he left the store." Officer Grandy recalled that the defendant made the statement "two or three times after which point in time he then said, well, maybe misdemeanor theft."

Nina Page, the defendant's mother, testified that she received a phone call from the Franklin police at some point in December 2010 or January 2011 regarding her cell phone. She said that the defendant had her cell phone at that time and had had it for about two weeks prior to the time she received the phone call. She recalled that the defendant apologized to her for having "[p]ut [her] . . . through all this[.]"

Following the conclusion of the proof, the jury convicted the defendant as charged of theft of property valued over $1,000 but less than $10,000.

## ANALYSIS

The defendant challenges the sufficiency of the convicting evidence, arguing that there is "insufficient proof that [he] obtained or exercised control over the entirety of the merchandise missing from the Publix" or, alternatively, that the State did not present sufficient evidence to prove that the missing merchandise was valued at $1,039.45.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and

circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the theft conviction in this case, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the owner of property, knowingly obtained or exercised control over property without the owner's effective consent and that the value of the property was between $1,000 and $10,000. Tenn. Code Ann. §§ 39-14-103, -105(a)(3) (Supp. 2012).

In the light most favorable to the State, the direct and circumstantial evidence is

sufficient to show that the defendant obtained or exercised control of the missing razor blade products. Zarcone testified that, on December 19, 2010, he noticed a void of six different SKUs of refill razor blade cartridges, when there were typically five or six items of each SKU. He determined that a theft had occurred and reviewed the store's surveillance footage. The footage showed one of the suspects in the razor blade section putting products into a hand basket. The suspect met up with the other suspect in another section, they huddled together, exchanged the basket, walked around the store, and exchanged the hand basket back and forth. The suspects left the store without going through the point of purchase. On December 30, Zarcone noticed the same two suspects inside the store, "huddled up" and exchanging razor blade products amongst each other. One suspect helped the other put products inside the other's jacket. They left the store without paying for any of the products. Zarcone followed them out the door and stopped and conversed with the defendant. The defendant told Zarcone that he did not have any products on him, but, when Zarcone asserted that the other suspect had products, the defendant ran away and met up with the other suspect who was waiting in a nearby car. The surveillance video from December 30 corroborated Zarcone's account.

Officer Marc Swain investigated the case, which included reviewing the evidence obtained by Zarcone – the suspect's cell phone, jacket, and vehicle license plate number, as well as Publix's surveillance video footage. Officer Swain determined the owner of the cell phone and car and identified two possible suspects. He created a six-person photographic array from which Zarcone identified the defendant with 100% certainty. From his review of the store's surveillance video footage, Officer Swain noted the similarity of the suspects on both dates as well as one suspect's similarity to the defendant.

In addition, Officer Grandy's and Nina Page's testimony indicated that the defendant knew he was guilty of a crime. When Officer Grandy transported the defendant following his arrest, the defendant, without provocation, stated that he may be guilty of misdemeanor theft. Nina Page, the defendant's mother, recalled that the defendant apologized to her for having "[p]ut [her] . . . through all this[.]"

We conclude that the sum of this direct and circumstantial evidence is sufficient for a rational trier of fact to find that the defendant obtained or exercised control over the razor blade products.

As to the value of the stolen items, Zarcone took an inventory of the store's razor blade cartridges on December 31, 2010, and the report showed that forty-five units were missing on that date. The report listed the number of items that should have been in stock for each razor blade cartridge SKU and the quantity the store actually had on its shelf. Zarcone calculated the total amount of product missing by multiplying the number of missing

items by their price and determined that the total retail value of the razor blade cartridges stolen on December 30 was $1,039.45. Zarcone reiterated that he personally saw the suspects taking products from the shelves and not purchasing them on December 30. In addition, Zarcone estimated that approximately thirty units were taken on December 19.

Zarcone stated that Publix ran an inventory batch report "almost daily" to ensure that "out of stocks [were] reported and balanced." At the beginning of the day on both December 19 and 30, the store did not have any out of stock razor blades, which indicated that the items "had clearly been taken on that day." He elaborated that the inventory was "trued up" on December 20 or else "the computer would not have re-ordered that product to come here to be on the shelf on the 30th." We conclude that the inventory report and Zarcone's testimony provided a sufficient basis for the jury to conclude that the value of the stolen items was greater than $1,000 but less than $10,000.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE